Good morning, everyone, and welcome. Our first case for argument this morning is FTC v. Credit Bureau Center. Mr. Koechel. Good morning, Your Honors. Stephen Koechel appearing on behalf of appellants along with Caleb Kruckenberg from the Pacific Legal Foundation. Mr. Kruckenberg will be presenting the So, this is the second time that the court has been called upon to interpret a provision of the FTC Act and the scope and extent of the FTC's authority to seek damages in the federal courts, specifically Section 19. The plain language of Section 19, perhaps there's a little background, this court issued what is, would be, I think, considered a landmark decision in the area of administrative law limiting the scope and extent of the FTC's power under Section 13b, reversing a case or a series of cases arising out of the Singer decision in California in the Ninth Circuit. And, I think the court's major point was that there was an enforcement scheme adopted by Congress in 1973 and 75 where Congress was prepared to enforce injunctive relief and allow the FTC to go in and get injunctions, but it rejected the idea, specifically rejected the idea of granting broad scope, the kind of broad scope presented by the Singer decision and its progeny. And so, Section 19 embodies that particular limitation, it's a limited remedy, and Congress specifically drafted it as a limited remedy saying Section 19a cases basically shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers and specifying specifically that nothing in that section allows exemplary or punitive damages. And in this case, we believe that the court, when this case went up to the Supreme Court, the Supreme Court unanimously affirmed this court's decision and expanded on the fact that Section 13b cases had been predominantly, if almost exclusively, used as the FTC's primary enforcement tool in these sorts of cases. With the blessing of this court and other appellate courts around the country. Yes, Your Honor. As Your Honor put it, courts uncritically accepted the reasoning in Singer and until this court took a hard look at the legislative history and found that the FTC really lacked that sort of authority and had basically done an end run around the congressional statutes, not really, if the FTC had come before this court or any other court and said, well, Congress rejected this broad authority and as Justice Breyer said, violated the legislative compromise, we wouldn't be here today. We wouldn't have had CBC 1. Well, right. The fact that our decision in this case and the Supreme Court's decision in the AMG case was a radical change in the law. Yes, Your Honor. And that opened the door for the Rule 59e motion to modify the judgment. Right. Well, that's certainly, that's their avenue of attack and what I would respectfully submit is that when you start looking at Rule 54c and Rule 59, these are rules that are intended to provide some relief but only if the evidence at the trial level has been crystallized and fully discovered and presented to the court. You can't go back and remake a judgment or amend a judgment when it will basically go far beyond what the evidence supported at the trial level or on summary judgment. Well, that's not the argument that you raised in response to the motion, the FTC's motion  Yes, Your Honor. When you made legal arguments about the mandate rule, about the scope of Rule 59, about Rule 54, no argument was raised that there was an inadequate factual basis for the modified remedy here. It's really just a substitute of one source of legal authority for another. Right. So it was quite about the law, not about the facts. Right. It was about the law. It was also about, and I believe I did raise Rule 26 below, and certainly in the mandate proceedings, I raised the issue that we didn't have Rule 26 disclosures. We didn't know exactly what their theory was for damages at the trial level on remand because it was never disclosed below. The scope of the damages award, the arguments that you're raising on appeal, which really weren't raised in the district court in this particular proceeding, the modification proceeding, the arguments were waived the first time around about the scope of the remedy in terms of the scope of the, the temporal scope of the remedy, which is an argument you're raising now for the first time. It was waived in the original proceedings. It wasn't argued in the judgment modification proceedings, even though you had noticed in May of 2021 that the FTC was seeking re-imposition of the same remedy in scope, a monetary award just under a different source of statutory authority. I believe that we did argue it at DACA 277 at page, I don't have it in front of me, but we did on our motion to enforce the mandate, we did argue that section, that Rule 26 damages had not been disclosed below and that it represented, you know, a difference in what we should have had and that there was no good cause and there was no harmless error. I don't see a challenge to the judge's denial of your motion to enforce the mandate here. What I see is a challenge to the re-imposition of the original judgment in response to the FTC's motion to do so using ROSCA and section 19. Well, with respect to ROSCA, the FTC did specifically say in its briefing below that they were not proceeding on, specifically as to ROSCA, that the issue of deceptiveness in the ROSCA websites was not at issue and that their damages were calculated solely on section 5. And I would consider that to be a waiver on their part. And when we went into the argument with Judge Conelli, we didn't realize that he was going to be essentially entering an amended judgment that specifically granted, you know, disgorgement damages. You had notice of that in May, you had six months notice of that before Judge Conelli ruled because that was specifically the FTC's request that the same judgment be re-imposed the monetary judgment be re-imposed pursuant to ROSCA and section 19 and the FTC submitted a proposed judgment to that effect. So you had lots of notice of what was coming. There was no surprise here. I'm having a little bit of trouble here. You had a lot of notice of what was coming. There was no surprise here. Right. I do respectfully submit, however, that in terms of jurisdiction, we don't waive these arguments when Congress is specific. There's no jurisdictional problem here. It's a question of whether the law supports the substitution of the ROSCA and section 19 source of authority for the monetary award for the previous rule, section 13B, which is not a proper source of that authority. We now know. The Supreme Court has confirmed that. Right. But again, the amended judgment enters a judgment for disgorging funds to the U.S. Treasury and so on. And we clearly raised the rule. And that argument is new on appeal. I'm sorry? That argument is new on appeal. There's been a substantial shift in the argument that you're making on appeal from what you argued to Judge Conelli in the modification proceeding. But we raised rule before Judge Conelli as well. You didn't challenge the scope of the remedy in the way that you're doing it now. You raised legal arguments about the mandate rule, Rule 59E, Rule 54, unclear hands. Your Honor, I thought that we raised arguments as to the Lew case, the scope of the remedy under Lew, as well as Rule 26 in our motion to enforce the mandate. And I believe that we did, and I'd like the opportunity to at least submit a one-page just citation to that. You did raise the Lew case, and so you're free to argue that. Right. That's a different question. You're arguing about the temporal scope of the remedy now, and you waived that argument in the initial proceeding, and you didn't address it before Judge Conelli on the modification proceeding. So that one's waived, or at least that's the FTC's argument, and there's a basis in the record for that argument. Yes, Your Honor. You did raise Lew, so if you'd like to launch into an argument on the Lew decision. Transplanting a $5.2 million judgment into this case as an amendment or as a modified judgment, we believe, is not warranted because it does increase the liability under the Lew case, which this Court has recognized as binding in FTC cases. In the Lew case, the calculation of gross receipts minus settlements, chargebacks, and refunds is not an equitable remedy. They must take account of expenses, and of course, in this case, there must be some recognition that they still have to prove, and the evidence did not prove, injury to consumers that made it necessary for the Court to enter a judgment that would cover that remedy. So, we do believe that Lew applies in this case, and that also the issue of an intervening change in the law, there was a radical shift in the law by this Court's opinion in CBC. However, we respectfully submit that it became the law of the case in this matter, and it became a binding rule of law that doesn't constitute a change in the general law outside the circuit. And we cited Wright and Miller in another case for that proposition. We understand that this is basically writing on a clean slate for the most part. Whether this could, under Rule 59, be an intervening change of law that would warrant the ability of a Court to modify the amended judgment. So, we do respectfully submit that under that circumstance, the judgment has to be set aside. I would give the rest of my time to Mr. Kruckenberger. That's fine. Thank you. Thank you. Mr. Bergman. Good morning, Your Honors. May it please the Court, my name is Michael Bergman. I represent the African Federal Trade Commission in this matter. Just, Judge Sykes is correct when she, and I just wanted to reiterate some key points about, and actually correct a couple of misstatements by my opposing counsel, that the $5.2 million judgment from the original District Court decision actually applied to all the claims, all the Section 5 claims, the FCR claims, but also the Rosca claims, to the extent to which she was trying to cut the Rosca piece off that was all part of the $5.2 million judgment as Judge Canelli made very clear, both the original proceeding and the proceeding below. How did he make that clear and where did he make that clear? Because there's a couple of fonts of information that's coming, that's feeding into that number, right? There's the Rosca-related websites, there's the Craigslist scheme. Is there any point at which there's a document or recitation as to what the $5.2 million consists of? I mean, it was in the judgments. I'm trying to think of a particular document. I mean, I believe both below, in this proceeding and the original proceeding, he did, I don't have the exact language, we can provide something, state that monetary relief derived from violations of all those claims. There obviously has been challenges to the Rosca number here, but as Judge Sykes made clear before, Judge Canelli, both below and particularly here, looked carefully at that and reiterated the fact that the Rosca violation, as Judge Sykes mentioned, that there's been a temporal forfeiture or waiver of that argument. But there's even record, even if there wasn't a waiver, there was a waiver, but even if there wasn't a waiver, there's evidence, record evidence, supporting what we call the pre-existing, the violation of Rosca for the pre-existing websites. Certainly for the websites beginning on December 1st, 2015, as this Court affirmed, very much so. But the record evidence that we have in our brief talks about, there's four categories of evidence that supports the pre-existing website violations of Rosca. I don't believe my co-counsel was able, they have never presented any evidence in the record at all of any kind of compliance with Rosca for the pre-existing websites. They've made bold statements about that, but there's record evidence in the section of our brief talking about the calculation, specifically about the record evidence supporting the pre-existing website violations. The only changes is actually a statement by Mr. Brown saying how the lack of disclosures with regard to the negative option feature itself didn't change from the pre-existing websites to the post-December 1st websites. And therefore, since this Court clearly found and affirmed that there had been a violation, a pretty egregious violation, not even disclosing what the subject of what this credit monitoring service was, that lack of disclosure existed during the entire 2014. There's evidence to support that, that it existed during the entire 2014-2017 period. I see a reference in Title IX, the monetary judgment portion of the modified final judgment in order. Is there a point in the District Court's Memorandum of Opinion and Order, this document 288, or in the modified final judgment where there's any type of explanation or reasoning as to how the $5.2 million has arrived at? There is. I'd have to, I may have to submit, I don't have, it may be best for me to go and submit something afterwards, but there's certainly been a perspective supporting where the $5.2 million came from. I'm specifically going to this distinction between the Rosca and the Craigslist. Sure. Yeah, yeah. No, I understand that totally. The first time around, as you two know, it was based on all three claims, and here it was just based on Rosca. But Judge Cannelli clearly was focused on the Rosca violations here. He said that there should be no, there were no deductions. He said that, you know, there's no tracing. He went through and all the analysis with respect to his document, his decision here, focused on the Rosca violations and the belief for those Rosca violations. But we can provide specific references. There's, I mean, I can find the, there's some prefatory paragraphs of the modified judgment that speak specifically about the findings that the monetary judgment here, the $5.2 million here, were based on the Rosca violations. I believe it's paragraph 9 of the modified judgment itself, and there may be something in paragraph 10. I see paragraph 10, yeah, of the findings. Right, right. So there's one area. There may be additional language, I'm sure there is, in the opinion itself. Let's assume there was not the forfeiture or waiver problem that we've been discussing and that the arguments that are raised now about the scope of the remedy were raised below. Is there a basis in section 19 and the list of possible remedies contained in that section for the disgorgement component of Judge Connelly's reimposed remedy? For the disgorgement? The disgorgement component. Are you referring to sort of the third, if we're looking at the distribution provision? I am. He orders, reimposes the $5.2 million as direct consumer redress, which is clearly mentioned in section 19 and incorporated by reference in Rosca. That's the whole theory here. But he also says that any money not used for this relief is to be deposited to the U.S. Treasury as disgorgement. Is that supported by the text of 57BB, you know, setting aside the waiver and forfeiture questions? Sure. It is not. And as a matter of fact, that language, because Judge Connelly himself, in his opinion, said this is not disgorgement. And there's a little bit of perhaps inconsistency there. The opinion itself says it's not disgorgement. Disgorgement is in the language here. That's the language of the judgment. Absolutely right. That takes precedence. So if the agency were starting afresh, writing on the AMG slate, you couldn't go into court now on the theory that you're advancing here and get a disgorgement remedy, the one that is incorporated as sort of the third option in Judge Connelly's order. Right. Well, first, we wouldn't say it's disgorgement. We would say that it's the— Payment to the Treasury. Right. Right. We would not. We would not be able to do that. As a matter of fact, there's authority in this court in an earlier case that actually gives the court authority to excise, has equitable power to excise it. The relief defines sort of justice and fairness. It would be true to do so. And the site for that is—I apologize. In the NLRB versus Colonial Haven case in 1976, this court said that we may adjust relief to the exigencies of the case in accordance with the equitable principles governing judicial action to bring this action to a close and to avoid delay. So we would not want to delay what the redress to consumers for the injuries that they certainly suffered by having a remand back from the district court because the district court record as it stands now fully supports the full monetary relief for the Roscoe violations. If this court, as Judge Sykes perceptively noted, that there seems to be some issue with respect to disgorgement to Treasury, our position is that Section 19, as my colleague here said many times in this brief, is for redress, is to provide full consumer redress to consumers. There's also a second step. We've jumped to the third step. I know why. But the first step is that money should go to consumers. And as you've mentioned, it's very likely that all the money—we've only collected 1.1 million. Twenty percent of the 5.2 million will go to consumers. It's very, very likely we have the names. We know where they are. If there's any money, any small monies left over, there's actually a second step that would need court approval. The FTC would need to go to Judge Connelly and ask for perhaps a nondirect redress, such as a public information remedy. So whatever residual monies there might be, and there probably won't be any, that would be eaten up by the second step. But Judge Sykes, you're correct. If any monies were left over with respect to which is very unlikely, we would not stand on monies being able to go to Treasury. Based on the language of Section 19, which provides full redress to make consumers whole. So it would be appropriate to excise that part of the judgment? We would not approve that. I'm happy to answer any other questions. I just wanted to also just highlight some of the key points, some of which you've already made here, that by invoking ROSCA in the complaint, the FTC had invoked all of the FTC Act enforcement provisions, including Section 19b remedies, and preserved that through a summary judgment. Christine Follow was actually even mentioned in a footnote in the summary judgment brief. But we did stand on Section 13b. There's no question that we pursued it, and that's because this court recognized there had been decades of binding precedent about supporting equivalent monetary under Section 13b. There's a very good reason why we did that. We gained no strategic advantage by not grazing it, because it's a completely duplicative relief. As a matter of fact, this court said explicitly in the CDC, in the credit Bureau 1, that it would be largely pointless to have pursued Section 19 relief, given the then-current interpretation of Section 13b. Therefore, an issue opened in the district court when the Court of Appeals has left open for the court to report back to the district court. There was nothing irregular, as Judge Sykes pointed out before, nothing irregular at all about bringing a motion to amend the complaint under Rule 59e, because we did it as quickly as possible. We did it within a few hours of the mandate from the Seventh Circuit, from this circuit. So that was actually what's contemplated by Rule 59e, due to the seismic change in the law in Section 13b. And Rule 54c also supports the remedy here, because we were entitled to having proven that Mr. Brown had violated RASCA, even if we hadn't even pleaded RASCA. It's 8404. We were entitled to that relief under Section, under Federal Rule 554c. And with respect to the scope of the remedy, we think it falls very comfortably within Section 18, which provides full redress to consumers. My counsel went back, and I think he was trying to suggest that there's some kind of equal language between 13b and 19, but Section 19 has a very different language. We talked explicitly about granting the court relief to provide redress to injured consumers as in the text of Section 19b. As this court made very clear in its first opinion here, this court should follow the express remedies that Congress provided. And here, what Judge Cannelli imposed was, frankly, following that express statutory language. If you would address the argument that's raised under the Liu case, which was preserved. So our position is that Liu does not apply here. We have two positions. It doesn't apply because it's a very different statutory language between Section 19, which explicitly in the statute itself talks about relief necessary, relief necessary to provide redress to consumers. In Liu, the SEC statute was talking about equitable relief. And those are, with this regard, Section 19b is a broader measure of relief. In other ways, perhaps like discouragement to the Treasury, it's narrower. With respect to consumer welfare, the perspective of the consumer, it's broader. Or certainly no narrower. It's broader. It requires relief to full redress to consumers. So the language of the statutes, very different language between the SEC statute as well as Section 19. But even if Liu does apply, we would argue that it falls within the Liu exception because the entire profits of Michael Brown's business or undertaking resulted from wrongdoing. As the judge at this court knows very clear, the entire scheme, from the prejudice scheme but here we're focusing on the roster violations, were egregiously violated. In that, at the very least, as Judge Steinck made very clear in the first opinion, there was no disclosure of the actual credit monitoring service at all. Consumers were basically paying an undisclosed fee for an undisclosed service. So we would argue that the entire scheme run by Michael Brown was fraudulent. It falls in the Liu exception so that there are no legitimate expenses incurred with respect to running his entirely fraudulent operation. Every cost fueled the scheme, as the Liu court talked about. It furthered the fraud. Mr. Brown never explained why any particular expense should be considered equitable in any way. It was his, since we had shown that consumer relief is supported here by significant evidence, it was his burden to come back and say, wait a second, it should be deducted by certain particular expenses or costs. And he never explained why any of his operating costs should be deducted as equitable. No other questions? Your first line of argument on Liu, though, is a legal argument that the statutory text is sufficiently different in 19b to take it outside the scope of the Liu. Right. And Liu actually, so when I talk about this, actually to put it a little bit more precise, we're talking about the application of the Liu net profits rule. As a matter of fact, Liu itself contemplates exactly here. Its very first line, Liu says that Congress did not define what falls under the umbrella of equitable relief. That's the very first line, the first line of one of the sections within Liu. And that strongly suggests to us that Congress can define what falls under the umbrella of equitable relief. In other words, so that the Liu net profits rule, the analysis of it doesn't apply. But Liu actually contemplated here the situation where Congress in section 19b actually did define a broader type of equitable relief, which requires full refunds to make consumers whole. Right. And some legal remedies as well as equitable ones. That's true. There are damages as well. We think that this is an equitable remedy. The fact that there's damages is clearly a legal remedy. We believe that in comparison, the refund of monies is an equitable remedy. So again, with respect to Liu, we think that the net profits rule doesn't apply. Liu contemplated the statutes that provide broader relief than what was in the SEC statute. We think this is the section 19b is that kind of statute that falls under a sort of broader umbrella of what kind of relief would fall under the equitable relief of section 19b. And so that's where, how Liu would, Liu does not affect the award here for those reasons. Mr. Bergman, with regard to our case, Consumer First, that wasn't brought to the attention of the district court, was it? No. It was after, it was handed down after the briefing had concluded, but before the district court had ruled. And neither party brought that case to the attention of Judge Cannella. I believe that's right, but I don't believe that would have changed his result at all because the simple fact is that Consumers First has the same analysis adopted as the Liu, as the Supreme Court did in Liu, because the statutory language was the same. It talked, it was a securities law that talked about equitable relief. And therefore this court said that therefore, you know, the term equitable relief would be governed by Liu, and therefore the Liu net profits rule. So even though the Judge Cannella may not have looked at that case, it would not have changed his result at all for that reason. Again, the statutory language is very different between the Liu Consumer First group of cases talking about equitable relief, very different from the express remedy in section 19b for full redress, to redress consumer injuries, to make consumers whole. Does the statute of question in that case have the same language here about full consumer redress? Well, so that, it does not have a full, it does have the language of refund of monies. It's, and so that is, that's true. It does not have the language that is the most critical language, which talks about requiring to court to grant the relief necessary to provide full redress to consumers. So even though refund of money is an example, along with restitution and disgorgement, and rescission, all those others, the more critical language here is what's in, rather than an illustrative example, is what's in the language itself, the provision. And here, again, 19b requiring full redress to consumers is very different from equitable relief, both in the Liu case and in Consumers First. All right, your time's up. Thank you. Thank you very much. Thank you. Thank you. Thank you. Mr. Kruckenberg? Thank you, Your Honor. Caleb Kruckenberg for the appellants here. We have a situation where the FTC has agreed that the judgment, at least partly, is improper, is unlawful. That is what my colleague just said to you. And the question is what this court has to do about it. I think there are two important distinctions in our argument about why this judgment is unlawful. There's the disgorgement piece, and there's also the calculation. And I know, Judge Sykes, you've mentioned a number of times which arguments were preserved or which arguments were adequately presented. And I think on the calculation, there's no question that we argued below that the calculation of the $5.2 million was improper, because that calculation represents gross receipts. And the court, to answer Judge Brennan's question, you asked where in the record his math is. He actually incorporated his original opinion. It's at Appendix A-25. That's the page where he says, I'm reincorporating my original math. And if you look at the original opinion, he says this $5.2 million calculation is gross revenue minus chargebacks, refunds, and settlements. That's it. That is all of the money that went in the door for the relevant period. And the FTC now is saying that that is consumer redress. And that's simply not what Section 19 allows. Section 19 says harmed consumers are eligible for direct repayment for whatever they've lost. And I think there has to be a recognition that the customers of Credit Bureau Center received something of value. There's no allegation from the FTC. They didn't get the products. They didn't get the credit reporting. They did. That's what they paid for. And the FTC's case here is that the advertising was improper. The way they acquired those customers was improper. But that's a very different question. And we cannot say that all of the gross receipts are improper just because of the way they acquired their customers when those customers got something. And to answer my colleague's argument about lieu, clearly that was preserved in the district court's second opinion. He actually had a section saying the non-application of lieu. And clearly that was error in light of this court's case in the Consumer First Legal Group decision where it said very clearly lieu applies to all categories of relief. It wasn't brought to the judge's attention. It was not, Your Honor. And so obviously we can't fault the district court for that. Well, we can fault parties, people who are litigating the case. That is correct, Your Honor. But I think when we're talking about a jurisdictional limit on the judgment, on the authority of a court to enter a judgment, it has to be corrected. And we certainly did argue the legal point. So you want Judge Connelly to revisit it in light of Consumer First? Is that your position? Well, the decision should follow, in our view, the statutory limits in Section 19. And so Consumer First talked about one of those because it talked about the limits of equitable relief. And I think the important language in lieu is that the court talked about when you have an award of gross receipts instead of net profits, that is a punitive award. And if we look at the statutory language of Section 19, it says you cannot have punitive or exemplary damages. It's a make-whole award. It is, Your Honor. And that's permitted under 19b.  In contrast to the statute at issue in lieu. Correct. But what the court in lieu said is when you have a judgment that says this is gross receipts versus net revenue, then that is punitive. Right. The statute that was being interpreted in lieu authorized equitable relief. So the court's ruling was tethered to equity principles. We've got a whole host of remedies that are available under Section 19b, including legal exemptions for consumers. And we've got a mandate to effectuate full consumer redress. That's a very different situation. That's a command to make consumers whole. That is correct, Your Honor. But it also says in the section. And that differs from equity. Equity seeks to prevent the wrongdoer from profiting. So it makes sense that you would not measure damages based on grosses. You measure them based on nets. It doesn't make sense in a make-whole world. And we're in a make-whole world here under 19b. That's separate from the question of disgorgement to the Treasury. We've got a concession on that, that that part of this judgment is wrong. And my response, Your Honor, to that is that the very next line of Section 19 says, in no instance can we interpret these other remedies as authorizing punitive or exemplary damages. This is not punitive. These are not punitive damages, as that term is understood by the law. It's just a different measure of damages. It's not punitive or exemplary damages. That's a loser argument. You can try to squeeze this into Lew, if you want, because you did preserve that argument. So have at it. Well, and, Your Honor, just to briefly address the waiver and the forfeiture, as my colleague calls it, we certainly did argue Lew. And we argued about the calculation. We argued about tracing funds and the FTC's requirement to prove some sort of loss here. Right. That's very different than the argument you're making on appeal, though. You've done a major pivot. It is, Your Honor. But part of it is the district court said, in his opinion, the FTC argued below, they said, we are not seeking disgorgement. And then, obviously, the district court also issued a disgorgement order. There's no dispute now that that's incorrect. Right. The judgment has to be fixed on that point. But if we're arguing about the scope of Section 19, that... That's an important statutory question. It is. In this case and going forward. Right. And part of it is it's very difficult to argue against a judgment where the court says, this is not the judgment I'm issuing. Because that's essentially what happened. But you had noticed that this was coming, because this is the judgment that was submitted with the motion to amend. Right. So... The court said, even in all of the briefing, it said it was not imposing disgorgement. And we did argue about the calculation. And finally, I think, regardless of whether this is appropriately preserved, this is a jurisdictional question. The statute actually uses the term, the court shall have jurisdiction to issue these orders. And so respectfully, Your Honor, I believe in this instance,  this is something this court has to address. What is the scope of Section 19? And is that consistent with the district court's order of gross receipts? Without any specific showing that this is payable to the harmed customers? Thank you, Your Honor. All right. Thanks very much. Our thanks to both counsel. The case is taken under advisement.